# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LEE JONES,<br><br>        Petitioner,<br><br>vs.<br><br>WARDEN HAROLD MAY,[1]<br><br>        Respondent. | CASE NO. 1:23-cv-01866<br><br>DISTRICT JUDGE CHRISTOPHER A. BOYKO<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Lee Jones ("Petitioner" or "Mr. Jones") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 based on his conviction for two counts of rape in Cuyahoga County Court of Common Pleas, Case No. CR-16-608422. (ECF Doc. 1 ("Petition").) He filed his Petition pro se on September 18, 2023.[2] (*Id.*)

The matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2. The case is briefed and ripe for disposition. (ECF Docs. 10 & 11.) For the reasons set forth herein, the undersigned recommends that the Court **DISMISS** the Petition as untimely.

---

[1] Petitioner originally named Warden Douglas Fender as the respondent on his Petition. (ECF Doc. 1, p. 1.) Respondent informed the Court that Petitioner was incarcerated at the Mansfield Correctional Institute at the time Respondent filed the Return of Writ, making Warden Harold May the proper named respondent. (ECF Doc. 7, p. 1; ECF Doc. 10, p. 1.) *See* Fed. R. Civ. P. 25(d) (allowing substitution of a public official party at any time and stating that any misnomer not affecting the parties' substantial rights must be disregarded).

[2] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)). Mr. Jones's Petition was docketed on September 25, 2023 (ECF Doc. 1) and placed in the prison mailing system on September 18, 2023 (*id*. at p. 15).

1

## I.      Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Eighth District Ohio Court of Appeals summarized the facts underlying Mr. Jones's conviction, sentence, and post-conviction discovery as follows:

> {¶ 2} On August 2, 2016, Jones was indicted on ten counts in case Cuyahoga C.P. CR–16–608422. Jones was charged with six counts of rape in violation of R.C. 2907.02(A)(2); one count of attempted rape in violation of R.C. 2923.02/2907.02(A)(2); one count of gross sexual imposition in violation of R.C. 2907.05(A)(1); and two counts of kidnapping in violation of R.C. 2905.01(A)(4). Each count carried a sexually violent predator specification pursuant to R.C. 2941.148(A), and the kidnapping counts both carried a sexual motivation specification pursuant to R.C. 2941.147(A).
>
> {¶ 3} At the time of the indictment, Jones was serving an aggregate 50–year prison term for prior rape convictions. In 2008, Jones was sentenced in one case to 40 years for four separate rapes. In 2016, Jones was sentenced to 10 years for another rape, to be served consecutively to the 40 years.
>
> {¶ 4} The indictment in this case encompasses two separate incidents, each involving the rape of a different victim, that occurred in 2001 and 2002, respectively. Jones was identified as a suspect in the 2002 incident, but the case was not pursued at that time. Ultimately, the charges in this indictment are the result of "hits," or matches, in the Combined DNA Index System.
>
> {¶ 5} On February 27, 2017, the trial court held a plea hearing. After engaging Jones in a plea colloquy, the trial court accepted pleas of guilty to two counts of rape, amended to list the respective victims' names and to remove the sexually violent predator specifications. The remaining eight counts in the indictment, together with all corresponding specifications, were dismissed. The trial court subsequently ordered the probation department to prepare a pre-sentence investigation report.
>
> {¶ 6} On April 18, 2017, the trial court held a sentencing hearing. After hearing from Jones's counsel, the prosecutor, one of the victims, and Jones, the trial court

sentenced Jones to three years imprisonment on both counts. The three year terms were ordered to run concurrently to each other and consecutively to the 50 years that Jones was already serving.

*State v. Jones*, 2018-Ohio-850, ¶¶ 2-6, 2018 WL 1217721, at *1 (Ohio Ct. App. Mar. 8, 2018); (ECF Doc. 7-1, pp. 51-52.)

{¶ 3} Approximately five years later, the state filed a "supplemental response to request for discovery under Rule 16" attaching a notification from the Bureau of Criminal Investigation that "a preliminary association was made between Ohio Bureau of Criminal Investigation – Richfield specimen 14-306858 1.4.1F2 Sak+ and" another individual. The identification occurred in February 2019 from a search of Ohio's State DNA Index System[.]

*State v. Jones*, 2022-Ohio-1674, ¶ 3 2022 WL 1577569, at *1 (Ohio Ct. App. May 19, 2022) (citations omitted); (ECF Doc. 7-1, p. 153.)

## II. Procedural History

**A.  State Court Conviction**

On August 2, 2016, the Cuyahoga County Grand Jury issued an indictment charging Mr. Jones with: six counts of rape (O.R.C.§ 2907.02(A)(2)) (Counts 1-4, 8-9); one count of attempted rape (O.R.C. § 2923.02/2907.02(A)(2)) (Count 5); one count of gross sexual imposition (O.R.C. § 2907.05(A)(1)) (Count 6); and two counts of kidnapping (O.R.C. § 2905.01(A)(4)) (Counts 7, 10).  (ECF Doc. 7-1, pp. 4-9.)  Each count carried a sexually violent predator specification pursuant to O.R.C. § 2941.148(A), and the kidnapping counts carried sexual motivation specifications pursuant to O.R.C. § 2941.147(A).  (*Id.*)  Mr. Jones pled not guilty.  (*Id.* at p. 11.)

On February 27, 2017, Mr. Jones changed his plea and pled guilty to rape as amended in Counts 4 and 9 of the indictment.  (ECF Doc. 7, p. 12 (stating that Counts 4 and 9 were amended by deletion of the sexually violent predator specifications).)  The trial court accepted Mr. Jones's guilty plea and nolled Counts 1, 2, 3, 5, 6, 7, 8, and 10.  (*Id.*)  On April 18, 2017, the trial court

3

sentenced Mr. Jones to three years in prison on each count, to be served concurrently with each other and consecutively to the prison sentence he was already serving. (*Id*. at p. 13.)

**B.      Direct Appeal**

On May 19, 2017, Mr. Jones, through counsel, filed a timely notice of appeal (ECF Doc. 7-1, p. 14) and memorandum in support (*id*. at pp. 23-34) in the Eighth District Court of Appeals. Mr. Jones raised the following assignment of error:

1. The trial court failed to make the necessary findings to impose consecutive sentences.

(*Id*. at p. 27.)  The State filed its brief in opposition on November 17, 2017.  (*Id*. at pp. 35-48.) On March 8, 2018, the Eighth District Court of Appeals remanded for the limited purpose of incorporating the consecutive sentence findings made at sentencing into the trial court's sentencing journal entry. (*Id*. at pp. 56-57.) Mr. Jones did not appeal this decision to the Ohio Supreme Court.  On April 20, 2018, the trial court amended its sentencing journal entry as directed by the Eighth District. (*Id*. at p. 58.)

**C.      Motion to Vacate Void Judgment**

On June 1, 2021, Mr. Jones filed a pro se Motion to Vacate Void Judgment and Sentence in the trial court ("Motion to Vacate"). (ECF Doc. 7-1, pp. 59-69.) He requested that the court vacate his judgment of conviction and sentence because a Supplemental Response to Request for Discovery that the State served on Petitioner's former counsel on March 25, 2021, purportedly showed Mr. Jones was not guilty of committing the rapes underlying his 2017 convictions. (*Id*. at 60-61.)  The State filed its brief in opposition on August 25, 2021.  (*Id*. at 70-85.)  On August 30, 2021, the trial court denied Mr. Jones's Motion to Vacate in a journal entry. (*Id*. at 86.)

Mr. Jones timely appealed the trial court's decision to the Eighth District Court of Appeals on September 24, 2021 (ECF Doc. 7-1, pp. 87-113), raising two assignments of error:

4

1. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO VACATE VOID JUDGMENT AND SENTENCE AS IT IS CONTRARY TO LAW.

2. TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S *MOTION TO VACATE VOID JUDGMENT AND SENTENCE AS IT IS CONTRARY TO LAW* WITHOUT CONDUCTING AN EVIDENTIARY HEARING, WHERE APPELLANT PRESENTED SUFFICIENT OPERATIVE FACTS TO SUPPORT THE AFOREMENTIONED MOTION.

(*Id*. at 96.) The State filed a brief in opposition (*id*. at 114-40), and Mr. Jones filed a reply (*id*. at 141-51). On May 19, 2022, the Eighth District Court of Appeals affirmed the judgment of the trial court. (*Id*. at pp. 152-63.)

On June 28, 2022, Mr. Jones filed a timely notice of appeal with the Supreme Court of Ohio (ECF Doc. 7-1, pp. 164-66) and a memorandum in support of jurisdiction (*id*. at pp. 167-82). Mr. Jones raised the two following assignments of error:

1. TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO VACATE VOID JUDGMENT AND SENTENCE AS IT IS CONTRARY TO LAW.

2. TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S *MOTION TO VACATE VOID JUDGMENT AND SENTENCE AS IT IS CONTRARY TO LAW* WITHOUT CONDUCTING AN EVIDENTIARY HEARING, WHERE APPELLANT PRESENTED SUFFICIENT OPERATIVE FACTS TO SUPPORT THE AFOREMENTIONED MOTION.

(*Id*. at p. 168.) The State did not file a brief in response. On September 13, 2022, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id*. at p. 197.)

### III. Federal Habeas Corpus Petition

Mr. Jones raises two grounds for relief in his Petition:

**Ground One:** Petitioner was denied his constitutional and due process rights by the trial court's imposition of a Void Judgment and Sentence.

**Supporting Facts:** The State contends that the Supplementary Discovery that disclosed to Jones filed on March 25, 2021 that details it was not the DNA of Petitioner Jones that matched Jones to the cold case rape of the victim herein but in fact, it was another individual has no bearing on the case herein. Nothing could be

5

further from the truth as the only alleged evidence against Jones in this cold case was the cold case DNA evidence. It must be noted that Jones constantly denied any involvement in the rape of the victim and had no recollection of the events and/or circumstances that the police asserted. Only through the strong coercion of Jones defense attorney who told Jones that it was no defense.

**Ground Two:** Petitioner was denied his constitutional and due process rights by the trial court's imposition of a Void Judgment and Sentence without an Evidentiary Hearing on the evidence presented herein.

**Supporting Facts:** Petitioner Jones asserts that the trial court should have conducted an evidentiary hearing because the facts alleged in his motion, if accepted as true, would require the court to vacate Jones' guilty pleas and sentences. Specifically, Jones asserts that the alleged DNA evidence that supported his guilt now clears him as the perpetrator of the rapes that Jones was indicted for in Cuyahoga County Common Pleas Court case number CR-16-608422-A. Petitioner Jones was informed by his attorney that due to the DNA evidence that match him to the crimes of this case, Jones had no other choice but to plea guilty because it was no defense to the DNA match of him to the rapes that occurred in Cuyahoga County Common Pleas Court case number CR-16-608422-A the fact is that it was a false DNA match as Jones DNA was not at the crime scene. Therefore, Jones should never been charged in the first place.

(ECF Doc. 1, pp. 5, 7.)

### IV. Law & Analysis

Respondent argues that the Petition should be dismissed or denied for several reasons, including: (1) the Petition is barred by the AEDPA statute of limitations (ECF Doc. 7, pp. 7-13; ECF Doc. 9, pp. 3-5); (2) Ground One of the Petition is procedurally defaulted (ECF Doc. 7, pp. 13-18; ECF Doc. 9, pp. 5-7); and (3) the claims asserted in Grounds One and Two of the Petition are non-cognizable and/or without merit (ECF Doc. 7, pp. 18-30; ECF Doc. 9, pp. 7-9). In response, Petitioner argues that: (1) any procedural default should be "waived in the interest of justice" and "to avoid a manifest injustice" (ECF Doc. 8, pp. 5-6); (2) the Petition was timely filed (*id.* at p. 6); and (3) he is entitled to federal habeas relief under Grounds One (*id.* at pp. 6-17) and Two of the Petition (*id.* at pp. 17-20). Although Petitioner asserts summarily that the

6

Petition was "timely filed" (*id.* at p. 6), he does not otherwise respond to the argument for dismissal under the statute of limitations.

For the reasons set forth below, the undersigned concludes that the Petition is barred by the statute of limitations. The undersigned therefore will not address Respondent's alternative procedural default and merits arguments and recommends that the Court **DISMISS** the Petition as barred by the statute of limitations.

A.      **Standard of Review Under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)). If an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *See Cullen*, 563 U.S. at 181.

**B.      AEDPA Statute of Limitations**

28 U.S.C. § 2244 limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus, providing:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d). AEDPA's statutory tolling provision provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). Thus, under section 2244(d)(2), the statute of limitations is tolled for as long as a properly filed application for post-conviction relief or other collateral review is pending in the state courts. *See Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003). This statutory tolling continues "until the application has achieved final resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), and further "until the expiration of the

8

period for further State court review, whether or not the petitioner actually seeks such review," *Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016) (internal quotations omitted).

Section 2244(d)(2) does not toll the limitations period during the filing of a subsequent petition for certiorari to the United States Supreme Court because such a petition is federal and therefore "not a part of a 'State's post-conviction procedures.'" *Lawrence v. Fla.*, 549 U.S. 327, 337 (2007) (quoting 28 U.S.C. § 2244(d)(2)). In addition, the tolling provision does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted). Thus, once the limitations period has expired, a "collateral petition[] can no longer serve to avoid a statute of limitations." *Id.*

In addition to statutory tolling, the AEDPA statute of limitations may be equitably tolled in appropriate circumstances. The Supreme Court has explained that this defense "is not jurisdictional" and "does not set forth an inflexible rule requiring dismissal whenever its clock has run." *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (internal quotations omitted). Equitable tolling allows federal courts to excuse the statute of limitations bar where tolling is appropriate to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules." *Id.* at 650 (internal quotations omitted). There are generally two forms of equitable tolling available, traditional equitable tolling and tolling based on "actual innocence."

To support traditional equitable tolling, a petitioner must show that: (1) "he has been pursuing his rights diligently"; and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (internal citations and quotations omitted); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011). Tolling is evaluated on a case-by-case basis and must be "applied sparingly," with the petitioner retaining the "ultimate burden of

persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted). "[P]*ro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse . . . late filing." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012); *see also Hall*, 662 F.3d at 750-52 (lack of transcript, pro se status and limited law library access did not warrant equitable tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (finding "lack of legal training, [a petitioner's] poor education, or even [a petitioner's] illiteracy" are not reasons to toll the statute of limitations).

The Supreme Court has also found that equitable tolling may apply where a petitioner "can credibly demonstrate actual innocence." *Hubbard v. Rewerts*, 98 F.4th 736, 742 (6th Cir. 2024) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)); *see also Patterson v. Lafler*, 455 F. App'x 606, 609 (6th Cir. 2012) (explaining that a petitioner "may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice") (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)). Equitable tolling under this standard "requires the presentation of 'new reliable evidence'" not presented at trial, which may include "'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Hubbard*, 98 F.4th at 743 (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995)).

Although a petitioner must present "new reliable evidence" to meet this standard, courts are directed to look to the entire record to determine whether a credible claim of actual innocence has been made. *Id.* (citing *House v. Bell*, 547 U.S. 518, 537 (2006)). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)) (internal quotation marks omitted). Thus, to be entitled to equitable tolling, a

10

petitioner must do "more than only undermine the state's case." *Hubbard*, 98 F.4th at 748. Ultimately, the Supreme Court has underscored that "the miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 569 U.S. at 395 (brackets in original) (quoting *Schlup*, 513 U.S. at 329).

### C. The Petition Should be Dismissed as Untimely

Respondent contends that the Petition is not timely because it was not filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," *see* 28 U.S.C. § 2244(d)(1)(A), and Mr. Jones has not shown that he is entitled to statutory or equitable tolling. (ECF Doc. 7, pp. 7-13.) Mr. Jones does not respond to this argument, except to assert summarily that the Petition "is timely filed with this Honorable Court." (ECF Doc. 8, p. 6.) However, he does argue in other contexts that a failure to address his Petition on the merits would cause a "manifest injustice" (*id.*) and that he is "actually innocent" of the crimes to which he pled guilty (*id.* at p. 15).

For the reasons explained below, the undersigned concludes that Mr. Jones's Petition is untimely under §§ 2244(d)(1)(A) and (D), and that he has not shown he is entitled to tolling.

#### 1. The Petition is Untimely Under § 2244(d)(1)(A)

The undersigned first considers the timeliness of the Petition under §2244(d)(1)(A), which starts the running of AEDPA's statute of limitations from the date the judgment became final through the conclusion of direct review or the expiration of time for seeking such review. The Eighth District Court of Appeals affirmed Petitioner's conviction and sentence on March 8, 2018. (ECF Doc. 7-1, pp. 49-57.) Petitioner then had 45 days to file an appeal with the Supreme Court of Ohio. *See* S.Ct.Prac.R. 6.01(A)(1). He did not file a notice of appeal on or before the

April 23, 2018 deadline.³ Therefore, the one-year statute of limitations under § 2244(d)(1)(A) started to run on April 24, 2018, and expired on April 23, 2019.

Mr. Jones did not file the Petition until September 18, 2023, over four years after the expiration of the statute of limitations. (ECF Doc. 1.) Thus, the Petition is time-barred unless the statute of limitations was tolled. The undersigned therefore turns to the question of tolling.

2. **Statutory Tolling Under 28 U.S.C. § 2244(d)(2) Does Not Apply**

Under § 2244(d)(2), the statute of limitations is tolled for as long as a properly filed application for post-conviction relief or other collateral review is pending in the state courts. *See Jurado*, 337 F.3d at 640. But this statutory tolling provision does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman*, 346 F.3d at 602 (internal quotations and citation omitted). Since Mr. Jones did not file his Motion to Vacate⁴ until June 1, 2021, over two years after the statute of limitations expired (ECF Doc. 7-1, p. 59), the request for relief could "no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602. Thus, statutory tolling does not apply.

3. **Equitable Tolling Does Not Apply**

Equitable tolling of the statute of limitations is available where a petitioner can show that "he has been pursuing his rights diligently" and "some extraordinary circumstance stood in his way and prevented timely filing," *Holland*, 560 U.S. at 649, or where he can demonstrate actual innocence though the introduction of new reliable evidence that was not presented at trial,

---

³ 45 days from March 8, 2018 is April 22, 2018, which was a Sunday. Therefore, Petitioner's notice of appeal to the Ohio Supreme Court was due the next business day, Monday, April 23. *See* Ohio S.Ct.Prac.R. 3.03(A)(1).

⁴ The undersigned recognizes that the Eighth District recharacterized this motion as a motion to withdraw a guilty plea. (ECF Doc. 7-1, pp. 157-60.) Regardless of the type of motion Petitioner filed, it was filed after expiration of the one-year statute of limitations and thus cannot toll the statute of limitations. *Vroman*, 346 F.3d at 602.

12

*Hubbard*, 98 F.4th at 742 (citing *McQuiggin*, 569 U.S. at 386 and *Schlup*, 513 U.S. at 324). Mr. Jones has failed to show that he is entitled to equitable tolling under either of these standards.

### i. Traditional Equitable Tolling

Respondent argues that Mr. Jones is not entitled to traditional equitable tolling because "he has asserted no reasonable circumstances outside of his control explaining why he failed to timely file his petition before this federal Court." (ECF Doc. 7, p. 10.) Mr. Jones does not respond to the statute of limitations arguments in his Traverse, except to assert that the Petition was "timely filed." (ECF Doc. 8, p. 6.) However, he does assert that the importance of his Petition "is based on the State's Supplemental Response to Request for Discovery dated March 25, 2021" in which Mr. Jones was "informed that the Ohio Bureau of Criminal Investigation identified another individual (Daniel C. Pierce) as the person that matched the DNA profile that was submitted by the state in this case." (*Id.* at pp. 3-4.)

Even if this Court assumes that the late disclosure of DNA evidence relevant to the identification of the perpetrator in the charged crimes constitutes an "extraordinary circumstance" that prevented the timely filing of the Petition, it must still be determined whether Mr. Jones "pursu[ed] his rights diligently" once he became aware of that evidence. *Holland*, 560 U.S. at 649. Here, the record indicates that Mr. Jones became aware of the DNA evidence in or around March 2021, but did not file the present Petition until two and a half years later, on September 18, 2023. While Mr. Jones did pursue related state court remedies beginning in June 2021, the Supreme Court of Ohio declined jurisdiction on September 13, 2022. Thus, even assuming that the statute of limitations was equitably tolled until the evidence was disclosed in March 2021, and was again tolled during the pendency of the related state court proceedings,

13

from June 2021 through September 2022, the one-year statute of limitations still would have expired well before Mr. Jones filed the Petition on September 18, 2023.

For the reasons set forth above, the undersigned concludes that Mr. Jones—who has offered no argument on the issue of equitable tolling—has not met his burden to demonstrate that he "pursu[ed] his rights diligently" after an "extraordinary circumstance" prevented the timely filing of the Petition.  *Holland*, 560 U.S. at 649; *see McClendon v. Sherman*, 329 F.3d 490, 495 (6th Cir. 2003) ("Because McClendon points to no diligent effort, and because his eleven-month delay . . . was not reasonable given these circumstances, no equitable tolling is available."); *Dunlap v. United States*, 250 F.3d 1001, 1010 (6th Cir. 2001) ("Petitioner's inability to explain why he did not file his third petition until over two months outside of the statute of limitations, more than fourteen months after his conviction was final, suggests a lack of due diligence."). Thus, the undersigned finds traditional equitable tolling is not warranted.

### ii. Fundamental Miscarriage of Justice

Respondent asserts that Mr. Jones cannot rely on a claim of "actual innocence" to support equitable tolling since he pled guilty to both crimes, and "his solemn declaration of guilt carries a presumption of truthfulness."  (ECF Doc. 7, p. 12; ECF Doc. 9, p. 4.)  Further, Respondent argues that the evidence and Mr. Jones's own admissions preclude a finding that he was actually innocent of either of the two rapes to which he pled guilty.  (ECF Doc. 9, pp. 3-5.)

While Mr. Jones does not seek equitable tolling of the statute of limitations, asserting only that the Petition was "timely filed" (ECF Doc. 8, p. 6), he does request the waiver of any procedural default "to avoid a manifest injustice" (*id.*) and argues that the new DNA evidence indicates he was not the perpetrator of one of the charged rapes, explaining:

> In this instant case, the State submitted a Supplementary Discovery Report that
> disclosed to Petitioner Jones filed on March 25, 2021, that details it was not the

14

> DNA of Petitioner Jones that matched Jones to the cold case rape of the victim herein but in fact, it was another individual. It is paramount to note that the only alleged evidence against Jones in this cold case was the cold case DNA evidence. It must be noted that Jones constantly denied any involvement in the rape of the victim and had no recollection of the events and/or circumstances that the police asserted happen to the rape victim herein. Only through the strong coercion of Jones defense attorney who told Jones it was no defense to the DNA evidence that linked him to the crime. Thereafter Petitioner Jones reluctantly changed his former plea of not guilty to guilty.

(ECF Doc. 8, p. 9.) Considering Mr. Jones's pro se status, the undersigned will consider his arguments relating to actual innocence and manifest injustice in the equitable tolling context.

A petitioner may be entitled to equitable tolling if he "can credibly demonstrate actual innocence." *Hubbard*, 98 F.4th at 742 (citing *McQuiggin*, 569 U.S. at 386). To do so, he must present "new reliable evidence" that was not presented at trial, such as "'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Hubbard*, 98 F.4th at 743 (quoting *Schlup*, 513 U.S. at 324). And even if new reliable evidence is presented, this Court must still consider the entire record in assessing whether a credible claim of actual innocence has been made because "actual innocence means factual innocence, not mere legal insufficiency." *Id.* (citing *House*, 547 U.S. at 537 and *Bousley*, 523 U.S. at 623). Ultimately, equitable tolling may only be awarded under this exception in cases where "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 569 U.S. at 395 (brackets in original) (quoting *Schlup*, 513 U.S. at 329).

Mr. Jones argues that the DNA report he received in March 2021 "establishes that the semen on the victim herein belongs to Daniel C. Pierce not Petitioner Lee Jones" and that "the DNA match as the perpetrator of the crimes of rape herein states that Daniel C. Pierce is the perpetrator not Petitioner Lee Jones[.]" (ECF Doc. 8, p. 11.) In challenging these assertions, Respondent notes first that Mr. Jones—as the state court of appeals also observed—did "not specify to which victim the latest DNA identification applies, if any, or how any further testing

15

impacts the factual foundation of his guilty pleas." (ECF Doc. 9, p. 4 (quoting *Jones*, 2022 - Ohio- 1674, ¶ 3).) Given that Petitioner is challenging two convictions, each involving the rape of a separate victim on a different date, this is a valid criticism. At most, the new DNA report relates to the evidence underlying only one of the two challenged convictions.

Further, Respondent argues: "[w]hile it is unclear which count (if any) the subsequent DNA result was related to, it is apparent that the result does not show that Jones was actually innocent of either assault." (ECF Doc. 9, p. 5.) Indeed, a review of the records relating to the two convictions—including Mr. Jones's own admissions—reveals that the new DNA evidence highlighted by Mr. Jones in his Petition is insufficient to demonstrate factual innocence.

As to the victim in Count Four, R.D., the prosecutor said she was punched, dragged into a house, and raped, but she got a hold of her attacker's box cutting knife, cut him with it, and escaped from the house. (ECF Doc. 7-2, pp. 42-43.) The police recovered the knife from the scene. (*Id.* at p. 43.) The prosecutor reported that Mr. Jones's DNA was on the knife, and at one point indicated that DNA from a knife *and* a sexual assault kit "both linked to [Petitioner] in that particular case." (*Id.* at pp. 17, 43.) Mr. Jones talked about R.D. at several court appearances, describing her as a drug addict who "sliced [him] up," cutting him on his face, neck, chest, and head. (*Id.* at pp. 50-51, 91.) He denied having sex with her and said that any DNA would have been from his blood. (*Id.*) Ultimately, he pled guilty to Count Four. (*Id.* at pp. 57-72.)

Even if this Court assumes that the new DNA report relates to a specimen in R.D.'s case, the DNA report indicates at most that a "preliminary association" was made between the specimen and a second individual, and that any possible connection between that individual and the case "must be determined through further investigation" and DNA testing. (ECF Doc. 7-1, p. 66.) On its face, the DNA report does not invalidate any prior findings linking Mr. Jones's DNA

16

to one or more specimens in the case. It simply identifies a potential additional match. Given Mr. Jones's plea of guilty, the reported match to his DNA on the knife, and his own repeated assertions that R.D. had cut him multiple times with a knife, the undersigned cannot find that the new evidence identified by Mr. Jones shows "it is more likely than not that no reasonable juror would have convicted" him of the rape charged in Count Four if the new DNA report form 2021 were considered. *See Schlup*, 513 U.S. at 329.

For the victim in Count Nine, S.J., the prosecutor reported that officers found her with Petitioner at the scene of the crime, where she told the officers that Petitioner had just raped her and was taken to a hospital to complete a sexual assault kit while Petitioner was arrested. (ECF Doc. 7-2, pp. 13-15, 32-34.) The DNA was matched to Petitioner. (*Id.* at p. 16.) The case was not pursued at the time because the detective was unable to contact S.J. (*Id.* at pp. 15-16, 34.) At Petitioner's sentencing hearing, S.J. testified to the circumstances of the rape and the police intervention. (*Id.* at pp. 81-83.) Petitioner also reportedly completed a statement while in police custody, saying that he and S.J. had consensual sex. (*Id.* at p. 35.) Mr. Jones talked about S.J. in court several times, saying that she was his girlfriend and that they were having sex in his garage when someone called the police. (*Id*. at pp. 50, 87-88.) He said he went to jail the day that the police came and was released when S.J. did not press charges. (*Id.*) Ultimately, he pled guilty to Count Nine. (*Id.* at pp. 57-72.)

If this Court were to assume that the new DNA report relates to a specimen in S.J.'s case, it must again be noted that the report indicates at most that there is a "preliminary association" between the specimen and a second individual, and that "further investigation" and DNA testing are needed to establish any further connection. (ECF Doc. 7-1, p. 66.) Given Mr. Jones's plea of guilty, the reported match to his DNA, and his own acknowledgement that he had sex with S.J.

17

on the day of the reported rape and was arrested by police when they arrived on the scene, the undersigned cannot find that the new evidence identified by Mr. Jones shows "it is more likely than not that no reasonable juror would have convicted" him of the rape charged in Count Nine if the new DNA report form 2021 were considered. *See Schlup*, 513 U.S. at 329.

For the reasons set forth above, the undersigned concludes that Mr. Jones has not met his burden to demonstrate that he is entitled to equitable tolling because he "can credibly demonstrate actual innocence." *Hubbard*, 98 F.4th at 742. The undersigned accordingly finds no grounds to apply equitable tolling to extend the statute of limitations beyond April 23, 2019, and concludes that Mr. Jones's Petition is untimely under § 2244(d)(1)(A).

### 4. The Petition is Untimely Under § 2244(d)(1)(D)

Although Mr. Jones does not present any argument regarding the statute of limitations, the undersigned notes—in light of Mr. Jones's pro se status—that a later start date to the AEDPA statute of limitations is sometimes available under § 2244(d)(1)(D), which provides that "[t]he limitation shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Given that the claims in the Petition are based on part on Mr. Jones's receipt of a new DNA report in March 2021, the undersigned will consider the potential applicability of § 2244(d)(1)(D).

Assuming the new DNA report Petitioner received in March 2021 could not have been discovered through the exercise of due diligence before that date, Mr. Jones's statute of limitations for related claims would have begun to run on March 25, 2021, the date the evidence was served (ECF Doc. 7-1, p. 69), and would have expired on March 25, 2022. Mr. Jones filed his Petition on September 18, 2023, over a year after the statute of limitations expired.

This analysis does not change if the Court applies statutory tolling under § 2244(d)(2) during the time that Petitioner's Motion to Vacate (recharacterized as a motion to withdraw a

guilty plea) was pending in the state courts. Mr. Jones filed his Motion to Vacate on June 1, 2021. (ECF Doc. 7-1, p. 59.) The statute of limitations would thus have run for 68 days—from March 25, 2021, through filing of the Motion to Vacate on June 1, 2021—before being tolled during the pendency of the Motion to Vacate in the state courts. Statutory tolling would have concluded on September 13, 2022, when the Supreme Court of Ohio denied jurisdiction for Petitioner's appeal.[5] (*Id*. at p. 197.) The statute of limitations would then have resumed running on September 14, 2022, with 297 days remaining. Under that measure, the statute of limitations expired on July 8, 2023, more than two months before the Petition was filed.

For the reasons set forth above, the undersigned concludes that Mr. Jones has not met his burden to show that his Petition was timely filed, even if a later start date were found to be appropriate under § 2244(d)(1)(D) and statutory tolling were permitted under § 2244(d)(2) during the pendency of state court proceedings on the Motion to Vacate. The undersigned accordingly finds that the Petition is untimely under § 2244(d)(1)(D).

---

[5] Since a motion to vacate or withdraw a guilty plea is an application for collateral review, Mr. Jones was not entitled to further statutory tolling under § 2244(d)(2) for the time during which he could have sought certiorari in the United States Supreme Court. *See Lawrence*, 549 U.S. at 334-37 (finding "the filing of a petition for certiorari before [the U.S. Supreme] Court does not toll the statute of limitations under § 2244(d)(2)").

V. **Recommendation**

For the reasons set forth above, the undersigned recommends that the Court **DISMISS** Mr. Jones's Petition (ECF Doc. 1) as barred by the statute of limitations.

May 14, 2025

>  /s/ *Amanda M. Knapp*
> AMANDA M. KNAPP
> UNITED STATES MAGISTRATE JUDGE

**<u>OBJECTIONS</u>**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).